THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE W. STEITZ, Chairman, etc., Respondent, v. EDWARD J. RICE, Appellant.

*Contempt — refusal to testify before a committee of a board of supervisors — proceedings must be taken before a judge, and not before the court — a justice is a judge — Code of Civil Procedure, sec. 2266.*

Proceedings to punish a witness who has refused to testify before a committee of a board of supervisors, under the provisions of section 4 of chapter 190 of the Laws of 1858 must be instituted and carried on before a judge, and not before a Special Term of the court.

A justice of the Supreme Court is a judge within the meaning of the said act of 1858.

The provisions of section 2266 of the Code of Civil Procedure apply only to a civil action or special proceeding pending in court, and have no application in the case of a witness subpœnaed to appear before a committee of the board of supervisors.

Appeal by the defendant Edward J. Rice from an order, entered in the Monroe county clerk's office on the 7th day of February, 1890, convicting the said Rice of a contempt in having willfully refused to answer certain questions put to him by the chairman of a committee of the board of supervisors of the county of Monroe.

*John Van Voorhis*, for the appellant.

*Walter H. Hubbell*, for the respondent.

Corlett, J.:

On the 9th day of January, 1889, the board of supervisors of Monroe county passed the following resolution :

" *Whereas*, It appears from the reports of the committee and trustees of court-house and jail accounts that excessive prices have been paid for materials furnished in the repairs made by the trustees ; therefore,

" *Resolved*, That a committee of five, including the chairman of the board, be appointed with full power to employ counsel, if deemed necessary, send for papers and persons ; to examine witnesses under oath in relation to all matters and transactions connected with the

repairs of said court-house from October 1, 1888, to December 1, 1889, and to report the same to the board of supervisors at their earliest convenience."

A committee was appointed in pursuance of this resolution on the 9th day of February, 1889. Edward J. Rice, the appellant, John Rice and William H. Rice were brothers. John was a member of the board of supervisors of Monroe county for the years 1888 and 1889. The firm of Rice Brothers had been for five or six years engaged in plumbing in Rochester. Edward was connected with the firm either as partner or in working for the firm on a salary. Edward denied having any interest in the firm, also denied that he received or was entitled to any salary while doing the repairs on the court-house. John Rice, while acting as a member of the board of supervisors, was appointed one of a committee to investigate the sanitary condition of the court-house and to report the probable expense of putting it in condition. The committee reported that the probable expense would be $1,700. The board thereupon referred the matters to the trustees of the court-house and jail, with power to act as would best serve the interests of the county. Soon after the said trustees, by verbal contract, directed the defendant Rice to make such repairs on the court-house as he saw fit. No limitations were imposed upon him, neither as to the character or the amount of the repairs. Rice commenced work and the trustees gave him orders for money at different times as the work progressed, amounting in all to $12,041.26. The job was commenced in February, 1889, and finished in May of the same year. Most of the plumbers and helpers engaged on the work were the employees of Rice Brothers. The only statements of account kept by the defendant appeared on the books of Rice Brothers in the handwriting of Swift, their bookkeeper. All bills rendered to the trustees were in his handwriting and all moneys on orders were paid to him, and when received were deposited in the bank account of Rice Brothers and to their credit.

All the radiators (thirty-six), that went into the job were ordered by the defendant in the name of Rice Bros., and were charged to and paid for by the firm. Most of the material that went into the job came from the same firm. In some of the bills the firm name was signed by the defendant. It is also claimed on the part of the

respondent, and the testimony tends so to show that the defendant charged for large amounts of materials not furnished at exorbitant prices. On examination before the supervisors' committee the defendant was subpœnaed as a witness. The following questions were put to him on his direct examination: "How much of the money which you received from the trustees for work done upon this job and materials furnished upon it, did you pay to Rice Brothers?" Also, "Did you ever have a contract of your own for doing plumbing work while you were connected with Rice Brothers until this contract?" The witness refused to answer either question, although the committee directed him to do so. The committee thereupon caused this refusal to answer to be reported to Justice RUMSEY. Upon these facts and on the 4th day of February, 1890, the said justice issued an attachment while holding, as the attachment indicates, a Special Term. The justice fixed the bail at $200.

The mandatory part of the attachment was: "Therefore, we command you to apprehend the said Edward J. Rice of Rochester, N. Y., if he be found in your county, and forthwith bring him before the Supreme Court at the court-house in the city of Rochester, county of Monroe, N. Y., where the said Edward J. Rice is ordered to show cause why he should not be punished according to law for contempt in refusing to answer each and both of the aforesaid questions so put to him as aforesaid; and have this writ, with your return thereto, filed in the office of the clerk of said court on or before the 5th day of February, 1890, at nine o'clock in the forenoon.

"Witness, Hon. WILLIAM RUMSEY, Justice of our Supreme Court at Rochester, N. Y., this 4th day of February, 1890.

"WM. OLIVER,     [Monroe County Seal, Rochester, N. Y.]<br>" <em>Clerk.</em>"

The indorsement of the sheriff was:

"I hereby certify that on the 5th day of February, 1890, I took into my custody the within named Edward J. Rice, and now have him here before Hon. WILLIAM RUMSEY, Justice of the Supreme Court, in obedience to the written writ.

THOMAS C. HODGSON,<br><em>Sheriff.</em>

By GEORGE H. LANE,
*Under Sheriff.*"

On the seventh day of February the following order was made :

" *The People of the State of New York to the Sheriff of Monroe County,* GREETING :

" Whereas, on the 7th day of February, 1890, by an order made by the Supreme Court at a Special Term thereof, held at the court-house in Rochester, N. Y., in a proceeding brought by the people on the relation of George W. Steitz, chairman, etc., against Edward J. Rice, it was ordered that the said Edward J. Rice be committed by the sheriff of the county of Monroe to the county jail of Monroe county, to be there detained in close custody until he submit to answer the following question, namely : ' Did you ever have a contract of your own for doing plumbing work while you were connected with Rice Brothers until this contract ? ' and stated and set forth in said order, or until he be discharged according to law. Then comes the command and is witnessed by Hon. WILLIAM RUMSEY, Justice of the Supreme Court at Rochester, N. Y., this seventh day of February, 1890.

" WM. OLIVER,<br>
" *Clerk.*"

It is assumed by counsel on both sides that the order, adjudging the defendant in contempt and inflicting punishment, was made at Special Term. The recital in the order of arrest so shows. It does not, except as above quoted, appear whether the attachment was issued at Special Term or by the justice witnessing it at Chambers. The power exercised by the board of supervisors was conferred by chapter 190 of the Laws of 1858. Section 4 of the act provides whenever a person duly subpœnaed * * * shall refuse * * * to answer any question, which a majority thereof shall decide to be proper and pertinent, he shall be deemed in contempt, and it shall be the duty of the chairman of the board or of the committee, as the case may be, to report the facts to the county judge, or to a judge of the Supreme Court or of the Superior Court or of the Court of Common Pleas of any of the cities of this State, who shall thereupon issue an attachment in the form usual *in the court of which he shall be judge,* directed to the sheriff of the county where such witness was required to appear and testify, commanding the said sheriff to attach such

person and forthwith bring him before the judge by whose order the attachment was issued."

Section 5 provides that, " on the return of the attachment and the production of the body of the defendant, the said judge shall have jurisdiction of the matter, and the person charged may purge himself of the contempt in the same way, and the same proceedings shall be had, and the same penalties may be imposed, and the same punishment inflicted as in case of a witness subpœnaed to appear and give evidence on the trial of a civil cause before a Circuit or Special Term of the Supreme Court." Section 8 provides, " all orders, decisions and judgments made and given in proceedings under this act by any judge out of court or term, shall be in writing, subscribed by him, and shall be filed in the office of the clerk of the county where such proceedings are had, and the clerk shall thereupon enter the proper and necessary orders and rules, and such orders, decisions and judgments shall have the like force and effect as if made and given to the court at a regular term or session thereof."

The appellant claims that no subpœna was issued or properly served. The case shows the reverse. It was properly served, the fees paid, and he appeared in pursuance thereof without raising any objection as to the mode of service. The counsel also claims that Justice RUMSEY is not a judge of the Supreme Court. This is a technical criticism, and without merit. Section 3343, subdivision 3 of the Code, defines a judge as any judicial officer. If the construction claimed by the learned counsel should obtain, a justice of the Supreme Court could not issue an attachment. (Code of Civ. Pro., §§ 640, 662.)

The real question on this appeal is, whether the Special Term had power to adjudge the defendant in contempt and punish him. The learned counsel for the respondent urges the affirmative of this proposition, and cites section 2269, subdivision 2, and section 2266 of the Code of Civil Procedure in support of his contention. Section 2266 provides as follows: " In a case specified in section 14 of this act, or in any other case where it is specially prescribed by law that a court of record or a judge thereof, or a referee appointed by the court, has power to punish by fine and imprisonment, or either or generally as a contempt, a neglect or violation of duty or other misconduct; and a right or remedy of a party to *a civil action or*

*special proceeding* in the court or before the judge or before the referee may be defeated, impaired, impeded or prejudiced thereby, the offense must be punished as prescribed in this title." It will be observed that this section only applies to a civil action or special proceeding pending in court. In the matter at bar there was no proceeding in court, but there was one created by a statute before the board of supervisors. The sections of the Code, therefore, have no application. It may be that the writ of attachment could be construed as made by a justice at chambers. (*Phinney* v. *Broschell*, 19 Hun, 116; affirmed, 80 N. Y., 544.) But there is no controversy as to where the attachment was made returnable, or as to the fact that the defendant was adjudged in contempt at Special Term.

In *Heishon* v. *Knickerbocker Fire Insurance Company* (77 N. Y., 278) it was held that, where a writ is purely a statutory one, the mode pointed out by the statute must be followed; that, therefore, a Special Term had no power to grant an order for the examination of a defendant for the purpose of enabling the plaintiff to make and serve his complaint.

The doctrine of this case would seem to be decisive of this appeal. The statute shows that the proceeding must be before a judge; here it was at Special Term.

It follows that the order appealed from must be reversed.

DWIGHT, P. J., and MACOMBER, J., concurred.